THE LAW FIRM OF

# CÉSAR DE CASTRO, P.C.

ATTORNEY AT LAW

7 World Trade Center, 34th Floor
New York, New York 10007

646.200.6166 Direct
212.808.8100 Reception
646.839.2682 Facsimile
cdecastrolaw.com

November 26, 2018

***Via* ECF and Email**

The Honorable Vernon R. Broderick
U.S. District Judge
U.S. District Court Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *United States v. Clark, et al.,* 17 Cr. 292 (VSB)

Dear Judge Broderick:

In May 2017, at the time of his arrest, Mr. Patterson was homeless, struggling with debilitating addiction to multiple substances, and living his life day to day without any thought of the future. Upon his release from incarceration Mr. Patterson will have what he has never had before in the almost twenty-four years he has been alive, a stable residence outside of New York City with family members in a position to provide him with the guidance and support he needs to thrive. And, for the first time since he was nine, Mr. Patterson has been sober for over one year. Combined with mental health and substance abuse treatment, this puts Mr. Patterson in the rare position of leaving custody in a better posture then when he entered it.

Sixty months' imprisonment followed by four years' supervised release, with mandated mental health and substance abuse treatment, is sufficient but not greater than necessary to achieve the goals of sentencing because: (1) Mr. Patterson's culpability for his crimes is mitigated by his lifelong exposure to narcotics and struggles with addiction; (2) it will allow him to get the drug treatment he desperately needs in the most effective manner and place him in the optimal position for maintaining his sobriety upon his release from incarceration; (3) Mr. Patterson's pretrial detention represents his first term of incarceration and sixty months will sufficiently deter him from engaging in future criminal conduct; and (4) the strong support system Mr. Patterson has in place for when he is released, combined with mental health and substance abuse treatment, will equip him with the necessary tools to succeed in his commitment to maintaining his sobriety and leading a law-abiding life as a contributing member of society.

**I.     The United States Sentencing Guidelines Advisory Range and the Presentence Report**

In the plea agreement, the parties stipulated to a United States Sentencing Guidelines ("Guidelines") offense level of 29 and Criminal History Category II. Based on the calculation above, the stipulated advisory Guidelines range is 97 to 121 months' imprisonment, with a mandatory minimum of 60 months' imprisonment. The calculation contained in the Presentence Investigation Report ("PSR") mirrors this calculation.

Notably, all of Mr. Patterson's criminal history points stem from Mr. Patterson's sole prior conviction, a 2016 conviction for attempted possession of a loaded weapon which resulted in a three-year sentence of probation. In the plea agreement the parties stipulated that the conduct underlying Mr. Patterson's prior conviction was conduct that was part of the instant offense; the PSR does not view this prior conviction as relevant conduct. *Compare* Plea Agreement at 4 *with* PSR ¶¶ 48-49. But for this 2016 conviction, which is viewed as relevant conduct by the parties, Mr. Patterson would have zero criminal history points and Criminal History Category I.

For the reasons discussed in detail herein, we respectfully ask the Court to impose a sentence of sixty months' imprisonment followed by four years' supervised release. We also ask that the Court require mental health and substance abuse treatment as conditions of Mr. Patterson's supervised release.

**II.    Sixty Months Is Sufficient But Not Greater Than Necessary to Achieve the Goals of Sentencing**

Sixty months' imprisonment is appropriate because: (1) Mr. Patterson's crimes were a byproduct of his lifelong exposure to narcotics and struggles with addiction; (2) it will allow Mr. Patterson to get the drug treatment he desperately needs in the most effective manner; (3) Mr. Patterson's first period of imprisonment doe not need to be prolonged to achieve deterrence; and (4) with the strong support system he has in place upon his eventual reentry into the community, combined with mental health and substance abuse treatment, Mr. Patterson will succeed in his commitment to maintaining his sobriety and leading a law-abiding life. For these reasons, a sentence of sixty months' imprisonment is sufficient but not greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

    A.    <u>Mr. Patterson's Lifelong Exposure to Narcotics and Struggles with Addiction Mitigate His Culpability</u>

Mr. Patterson's lifelong exposure to narcotics and struggles with addiction do not excuse the fact that he chose to break the law. However, understanding the prevalence of narcotics in his life from the time of his conception through the time of his arrest helps make sense of why an individual whose life has been so negatively impacted by narcotics could turn to them instead of shun them. The role of narcotics in and how they affected Mr. Patterson's life is thoroughly detailed in the Presentence Memorandum completed by the defense mitigation specialist. *See* Presentence Memorandum attached hereto as "Exhibit A."

While we respectfully refer the Court to Exhibit A for a completed recitation of Mr. Patterson's history, we believe it is important to highlight five aspects of Mr. Patterson's life as detailed by Exhibit A.  First, it explains how the social learning theory provides insight into why, despite possessing at a very early age an awareness of the damage narcotics can cause to families and communities, Mr. Patterson himself became a drug user and seller.  *See* Ex. A at 6-7.  Second, it details the confluence of factors that led Mr. Patterson to drop out of high school in his senior year, *i.e.*, the death of his grandmother, his mother's relapse, and the incarceration of his brother, instead of graduate.  *See id.* at 7, 11.  Third, it describes how as early as age nine, Mr. Patterson turned to substance use as a form of coping behavior for the stress and trauma in his life and as a form of self-medication for his untreated mental health issues.  *See id.* at 12-13, 16, 18, 20-21.  Fourth, it details what Mr. Patterson needs upon his release to place him in the optimal position to succeed in his commitment to leading a sober law-abiding life as a contributing member of society, *i.e.*, mental health counseling, substance abuse treatment, family support, a permanent residence in a new environment, greater opportunities for employment, and stability.  *See id.* at 25.  Lastly and most importantly, it explains how upon his release Mr. Patterson will have family support and a permanent residence in a new environment, which combined with mandated treatment and earning his GED, will result in greater opportunities for employment and stability in his life, things Mr. Patterson has never had.  *See id.* at 9-10, 25.

The information concerning Mr. Patterson's lifelong exposure to narcotics and struggles with addiction is not being presented as an excuse for his criminal conduct.  However, we believe that the appropriate sentence for Mr. Patterson is one that recognizes that his criminality is inextricably linked to his drug use.

>   B. <u>Sixty Months' Imprisonment Will Allow Mr. Patterson to Obtain Treatment That Will Put Him in the Optimal Position to Maintain His Sobriety</u>

One of the goals of sentencing is to provide the defendant with needed correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(2)(D).  Despite maintaining his sobriety for over a year while incarcerated, Mr. Patterson believes that he needs intensive help, supervision, and therapy before he is ready to maintain his sobriety outside of a custodial setting. The U.S. Bureau of Prison's Residential Drug Abuse Program ("RDAP") would most effectively provide him with the treatment he needs to do so.

For the first time since he was nine, Mr. Patterson has been sober for more than a year.  Mr. Patterson acknowledges that to maintain his sobriety upon his eventual release from incarceration he needs specialized treatment.  He is eager to be sentenced so that he can participate in RDAP, a comprehensive and structured treatment program that is not offered to pretrial detention inmates.  The requested sentence of sixty months' imprisonment is sufficient time for Mr. Patterson to be accepted into and complete RDAP.

Mr. Patterson is confident that the treatment he will receive through RDAP, combined with mental health counseling, will most effectively place him in the position to maintain his sobriety upon his eventual release from incarceration, which will act as the most powerful deterrent to any future criminal conduct on his behalf.

C. <u>Mr. Patterson's First Period of Incarceration Does Not Have to be Prolonged to Achieve Deterrence</u>

A sentence of sixty months' imprisonment followed by four years' supervised release will deter Mr. Patterson from future criminal conduct. Prior to his arrest Mr. Patterson did not envision a future for himself. He approached each day with two goals: (1) get high; and (2) make it to the next day. As long as he accomplished those two goals, his day was a success. Despite his incarceration, his sobriety over the past eighteen months has sparked his passion for life. He now sees and wants a future for himself beyond getting high and making it to the next day. This is something he could not imagine prior to his arrest. He is confident that equipped with the skills and coping mechanisms he will learn in RDAP and in subsequent treatment, he will be able to maintain his sobriety after he is released from incarceration. As noted above, Mr. Patterson's sobriety is the most powerful deterrent to any future criminal conduct.

Mr. Patterson's pretrial detention represents the only period of incarceration he has ever served. In the eighteen months Mr. Patterson has spent incarcerated he has never been sanctioned by the Bureau of Prisons ("BOP") for violating any institutional rules or regulations. *See* PSR ¶ 11. This is no small feat when one considers that in 2017 60% of medium security inmates and 79% of high security inmates were sanctioned for violating BOP rules. *See* U.S. DEP'T OF JUSTICE, FED. BUREAU OF PRISONS FY 2019 PERFORMANCE BUDGET CONGRESSIONAL SUBMISSION SALARIES AND EXPENSES (2018), https://www.justice.gov/jmd/page/file/1034421/download (last visited Nov. 26, 2018) at 6, 11. While the cited report does not include data as to the number of pretrial inmates sanctioned by the BOP, Mr. Patterson's perfect compliance with BOP rules and regulations appears to place him in the minority of federal inmates and undoubtedly speaks to his respect for the law. This is also evidence that Mr. Patterson is committed to using his time incarcerated in the most productive manner possible.

While Mr. Patterson is committed to earning his GED while incarcerated, his efforts to do so have been stymied by the lack of resources offered to pretrial inmates. Despite this he has taken advantage of any meaningful opportunities presented to him. Indeed, in April 2018 he was awarded a certificate from the BOP in recognition of his good work ethic during program projects. *See* BOP Certificate attached hereto as "Exhibit B." Mr. Patterson is eager to be sentenced and designated to the institution he will serve the remainder of his sentence at. Once there, instead of struggling to get resources to further his goal of earning his GED, they will be provided to him and be a requirement of his incarceration. *See* FED. BUREAU OF PRISONS, PROGRAM FACT SHEET (last updated Aug. 31, 2018), https://www.bop.gov/about/statistics/docs/program_fact_sheet_181105.pdf (last visited Nov. 26, 2018). He is confident that he will be able to achieve his goal of leaving custody with a GED. Mr. Patterson's model behavior as an inmate is proof that prolonged incarceration is not needed to deter him from committing crimes.

Mr. Patterson understands that he has reached a critical crossroads in his life. As his guilty plea, acceptance of responsibility and the letters from his family and friends show, Mr. Patterson has taken stock, has learned from his mistakes, and is determined to avoid making them again. In addition, the experience of incarceration during the past eighteen

months has had a dramatic, positive impact on his outlook and understanding of the severity of his misconduct.  Research indicates that such benefits of incarceration, in terms of reorienting the defendant's thinking and deterring him from engaging in criminal activity in the future, will not be magnified by imposing a lengthier sentence.  Nor is the public likely to benefit from requiring Mr. Patterson to serve additional time beyond sixty months.  To the contrary, statistical studies strongly indicate that there is a diminishing relationship between additional incarceration and deterrence. *See generally* Valerie Wright, Ph.D., *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project Research and Advocacy for Reform (November 2010) at 9 ("Based upon the existing evidence, both crime and imprisonment can be simultaneously reduced if policy-makers reconsider their overreliance on severity based policies such as long prison sentences.").  Indeed, as noted by Dr. Wright, "research findings imply that increasingly lengthy prison terms are counterproductive." *Id*.  Not only will a lower sentence with supervised release reduce the cost of Mr. Patterson's sentence approximately $30,000 each year, *see* PSR ¶ 95, but it is unlikely to increase the risk to public safety.  It also reduces his contact with the more serious offenders he likely will encounter while incarcerated.  *See* Ex. A at 22-23.

As a young offender committed to leading a law abiding life with the ample support of his loved ones, the benefits of a short sentence outweigh the risks of public safety and recidivism.  *See* Ex. A at 24.  Critically, for the first time in his life Mr. Patterson has family members in the optimal position to help him succeed in his commitment to becoming a law-abiding contributing member of society.

> D. <u>With the Strong Support System He Has in Place Upon his Reentry into Society, Combined with Mental Health Counseling and Substance Abuse Treatment, Mr. Patterson Can Succeed</u>

Mr. Patterson has always looked to his older brother, Lance Patterson, as a role model.  *See* Letters from Family and Friends attached hereto as "Exhibit C" at 2-3.  Despite being only eight years older, Lance was the sole paternal figure present in Michael's life.  Lance believes that his being sent to prison, when Michael was around seventeen, combined with their mother's relapse and their grandmother's sickness and death, had a profoundly negative effect on Michael.  *See id.* at 3.  He further believes that at that point in Michael's life, lacking familial support, "the streets and drugs ate him up alive[.]"  *Id*.  Lance struggles with feelings of guilt over what he views as his failure to provide Michael with the help he so desperately needed as a child, of course, Lance too was a child himself and unlike Michael, resided in a stable residence for the majority of his childhood.  *See id.* at 2-3.  In the years subsequent to his incarceration Lance has made incredible progress in turning his life around.  *See id*. at 4.  And Lance is finally at a place in his life where he can provide Michael with stability and guidance in addition to love.

Lance and his wife, Ivory, both of whom are gainfully and happily employed, reside in a house with their two daughters in Monticello, New York.  They have an extra room in their home they are reserving for Michael when he is released from incarceration.  Ivory and Lance have made it clear to Michael that the offer to reside with them and their daughters is

5

conditioned on a zero-tolerance approach to narcotics of any kind.  This is the ideal environment for Mr. Patterson as he navigates his sobriety outside of a custodial setting.

Undoubtedly the ability to reside in a stable residence outside of New York City will place Mr. Patterson in the optimal position for his successful reentry into society.  But moving in with Lance and Ivory will provide Michael with more than just a stable residence in a new environment, it will provide him with two role models to assist him in navigating his reentry.  As an individual who recently successful transitioned from being a prisoner to a contributing member of society, Lance is the ideal exemplar for Michael.  *See* Ex. C at 4.  As a former probation officer, Ivory knows that good people, including Michael, make bad choices and mistakes.  *See id.* at 5-6.  But she also knows that when a person is truly dedicated to changing their life for the better and has the resources and support to effectuate such change, they can thrive.  She believes that with the help and support she and Lance can provide to Michael, he will do just that, succeed in his commitment to leading a law-abiding life as a contributing member of society.  *See id.* at 6.  Michael agrees, and is eager for the opportunity to prove it not just to them but to himself.

### III.    Conclusion

For all the foregoing reasons, it is respectfully requested that the Court sentence Mr. Patterson to sixty months' imprisonment followed by four years' supervised release with mandated mental health and substance abuse treatment.

Respectfully Submitted,

/s/

Valerie A. Gotlib
César de Castro


cc:     All counsel of record (*via* ECF)

        Sarah Krissoff
        Assistant United States Attorney (*via* ECF and Email)