


**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 30, 2018

**BY ECF and EMAIL**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
New York, New York 10007

**Re: *United States v. Michael Patterson*, 17 Cr. 292 (VSB)**

Dear Judge Broderick:

The Government respectfully submits this letter in advance of the sentencing proceeding for defendant Michael Patterson, which is scheduled for December 5, 2018. For the reasons set forth below, the Government submits that a sentence within the Guidelines range set forth in the plea agreement, 97 to 121 months' imprisonment, is fair and appropriate.

Background

Beginning in or about 2015, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), Homeland Security Investigations ("HSI"), and the New York City Police Department ("NYPD") began investigating violence and drug-trafficking in the Hunts Point area of the Bronx. That investigation lead to the indictment of 25 individuals, in two separate but related Indictments, 17 Cr. 290 and 17 Cr. 292. PSR ¶ 8. Patterson was charged in 17 Cr. 292, and ultimately pleaded guilty to conspiring to distribute and possess with the intent to distribute 28 grams and more of crack cocaine (lesser included offense of Count One) and participating in a Hobbs Act robbery on or about June 22, 2016 (Count Five).

Patterson sold drugs, particularly crack cocaine, with other individuals in Hunts Point. In his plea agreement, Patterson agreed that the offense involved at least 280 grams, but less than 840 grams, of cocaine base. PSR ¶¶ 10, 16. Patterson and his associates controlled crack sales in an area of Hunts Point known as the "triangle," which is in the vicinity of Hunts Point Avenue, Spofford Avenue, and Faille Street in the Bronx. PSR ¶ 16.

Patterson also instigated and participated in a violent robbery of a drug dealer. As described in the PSR, on or about June 22, 2016, Patterson initiated a plan with three co-conspirators, to rob a drug dealer. Patterson had one gun on him when he met up with his co-conspirators before the robbery, and the men went to pick up the second gun at Patterson's direction. Co-defendant Vizcarrondo drove the men to the location to pick up the firearm, and then drove them to the Marble Hill area of the Bronx, where they approached a drug dealer who was selling drugs out of his car. Vizcarrondo waited in the getaway car, and Patterson and the two

other co-conspirators robbed the drug dealer and his associates at gunpoint, before running back to the car. PSR ¶ 17.[1]

During the course of the robbery, one of the co-conspirators, and then Patterson, fired their weapons. No one was hit. The police responded to the location, and recovered a .45 caliber shell casing and .45 caliber bullet fragments, as well as surveillance video. A few months later, Patterson was arrested in possession of one of the firearms that was used at the robbery, which was confirmed through ballistics testing. PSR ¶¶ 17-18.

In the plea agreement, the parties stipulated that the applicable offense level is 29, and that the defendant is in Criminal History Category II, resulting in a stipulated Guidelines range of 97 to 121 months' imprisonment. PSR ¶ 10. The Probation Department also determined that the applicable Guidelines range is 97 to 121 months' imprisonment. PSR ¶ 85.[2]

## **Discussion**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range": that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see* 18 U.S.C. § 3553(a)(2); "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); the Guidelines range itself, *see* 18 U.S.C. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see* 18 U.S.C. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," 18 U.S.C. § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[1] As set forth in the PSR, the defendant initially submitted objections to some of the offense conduct to Probation. PSR at 18. It is the Government's understanding that the defendant is not pursuing those objections, and is not challenging the offense conduct as set forth in the PSR.

[2] While the parties agreed that the defendant's 2016 conviction constitutes relevant conduct for the instant offense, and accordingly does not result in any criminal history points, the Probation Department gave the defendant 1 criminal history point for this conviction. *See* PSR ¶ 48. Under either calculation, however, the defendant's Criminal History Category is II.

  (B)  to afford adequate deterrence to criminal conduct;
  (C)  to protect the public from further crimes of the defendant; and
  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

  Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

  Patterson's involvement in a destructive narcotics conspiracy – and a violent, gunpoint robbery – warrant a significant term of incarceration within the applicable Guidelines range. Such a sentence would reflect the seriousness of the offenses, and provide just punishment. A Guidelines sentence would also take into account that Patterson has been convicted of two separate, and very serious, wrongs. First, Patterson and his co-conspirators controlled the drug trade in a certain area of Hunts Point. They wreaked havoc upon their community (a community which, as set forth in the defendant's own sentencing submission, has been ravaged by drugs), and should be held accountable for doing so.

  Second, Patterson instigated and initiated the violent robbery to which he pleaded guilty. Patterson picked the target of the robbery, an individual and his associates believed to be selling drugs out of a car, and directed his co-conspirators to that target. Patterson was responsible for the firearms used during the robbery, and personally held the victims at gunpoint. After one of Patterson's co-conspirators fired his weapon, Patterson fired the gun he was holding. The Government believes that he thought he was being fired upon when he did so. Fortunately, the Government is not aware of any injuries, but the defendant, by his actions, created a grave risk of danger. The defendant kept at least one of the guns after the robbery, accidentally shooting himself in the hand with it a few months later. The nature of the offense warrants a significant sentence.

  In his sentencing submission, Patterson focuses on his difficult upbringing, and his own substance abuse. The Court should certainly take these things – the defendant's history and characteristics – into account when fashioning the appropriate sentence. However, the Government submits that the application of the § 3553(a) factors still warrant a sentence within the applicable Guidelines range of 97 to 121 months' imprisonment set forth in the plea

agreement, and as recommended by Probation. PSR at 21 (recommending a sentence of 97 months' imprisonment). In addition to reflecting the seriousness of the offense and providing just punishment, such a sentence would provide adequate deterrence (both specific and general) and protect the public from further crimes by the defendant. Particularly in light of the defendant's involvement in both violence and prolonged drug trafficking, a sentence within the Guidelines range set forth in the plea agreement would be sufficient but no more than necessary to meet the goals of sentencing.

## Conclusion

For the reasons set forth above, the Government respectfully requests that the Court sentence this defendant to a term of imprisonment consistent with the parties' stipulated Guidelines range.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _/s/ _Sarah Krissoff_____________
Sarah Krissoff
Assistant United States Attorney
(212) 637-2232

Cc: Cesar de Castro, Esq. / Valerie Gotlib, Esq. (counsel for Michael Patterson)